UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

EDUARDO PEREZ-HERNANDEZ,

        Plaintiff,

v.

ALBINO HERNANDEZ;
SMITH FARMS, INC.; TY H. POWELL;
SMITH FAMILY FARMS OF GEORGIA,
LLC; and MACK C. WALLER,

        Defendants.

Civil Action No.:

**COMPLAINT**

**I. PRELIMINARY STATEMENT**

1.     Plaintiff is a guest worker from Mexico who was brought to the United States through the federal government's H-2A guest agricultural worker visa program to work in Defendants' agricultural operations in Georgia in 2021.

2.     Plaintiff was charged illegal fees to secure the H-2A job, was subjected to deplorable living and working conditions, was denied his earned wages, was coerced through threats to provide labor, and his travel documents were confiscated to control his movements. As a result, Plaintiff suffered significant economic and psychological harm.

3.     Plaintiff now brings this action to vindicate his rights under the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"), 18 U.S.C. §§ 1595, *et seq.*; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; and under Georgia contract law.

4.     Plaintiff seeks unpaid wages, statutory liquidated damages, general and special damages, punitive damages, emotional distress damages, damages arising from breach of contract, pre- and post-judgment interest, costs, and reasonable attorney's fees.

1

## II. JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action under:

      a)      28 U.S.C. § 1331 (Federal Question);

      b)      28 U.S.C. § 1337 (Interstate Commerce);

      c)      29 U.S.C. § 216(b) (FLSA);

      d)      18 U.S.C. § 1595(a) (TVPRA); and

      e)      28 U.S.C. § 1367 (Supplemental Jurisdiction).

6.      This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III, Section II of the U.S. Constitution.

7.      Venue is proper in this district and division under 28 U.S.C. § 1391(b)-(d) and S.D. Ga. Local Rule 2.1 because Defendant Albino Hernandez resides in Toombs County, Georgia, and a substantial part of the events or omissions giving rise to the claims occurred within this district and division.

## III. PARTIES

### Plaintiff

8.      Plaintiff is a citizen of Mexico admitted into the United States on a temporary basis pursuant to the federal H-2A Program.[1]

9.      Plaintiff's FLSA consent form is attached as Exhibit A.

---

[1] *See generally* 8 U.S.C. § 1188; 20 C.F.R. § 655.0, *et seq.*

**Defendant Hernandez**

10.     Defendant Albino Hernandez ("Hernandez") is an individual residing in Toombs County, Georgia, and can be served at 931 SA Harden Road, Lyons, GA 30436.

11.     Defendant Hernandez is an H-2A Labor Contractor ("H2ALC") because he recruited, solicited, hired, employed, furnished, housed, and/or transported H-2A workers, and is not a fixed-site employer, an agricultural association, or an employee of a fixed-site employer or agricultural association.[2]

12.     At all times relevant to this action, Defendant Hernandez had the right to control the manner and means by which Plaintiff performed his work.

13.     At all times relevant to this action, Defendant Hernandez was an employer of Plaintiff under the FLSA, in that he suffered or permitted Plaintiff to work.[3]

14.     At all times relevant to this action, Defendant Hernandez operated an enterprise engaged in commerce or in the production of goods for commerce because he had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce, and had annual gross volume of sales made or business done that was not less than $500,000.[4]

**Defendant Farms**

15.     Defendant Smith Farms, Inc. ("Farms") was a Georgia corporation, with principal address at 1455 E.L. Vaughn Rd., Cobbtown, GA 30420.

16.     At the time of its dissolution, Defendant Farms' Chief Executive Officer was Ty H. Powell, who can be served at 93 Aspen Lane, Kite, GA 31049.

---

[2] *See* definition of "H-2A labor contractor" at 20 C.F.R. § 655.103.
[3] *See* definition of "employ" at 29 U.S.C. § 203(g).
[4] *See* definition of "Enterprise engaged in commerce or in the production of goods for commerce" at 29 U.S.C. § 203(s)(1).

17.     At all times relevant to this action, Defendant Farms was a fixed-site employer because it owned or operated a farm, or other similar fixed-site location where agricultural activities were performed, and because it recruited, solicited, hired, employed, housed, or transported H-2A workers as incident to or in conjunction with its own agricultural operation.[5]

18.     At all times relevant to this action, Defendant Farms was an employer of Plaintiff under the FLSA, in that it suffered or permitted Plaintiff to work.

19.     At all times relevant to this action, Defendant Farms was an enterprise engaged in commerce or in the production of goods for commerce because it had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce, and had annual gross volume of sales made or business done that was not less than $500,000.

## Defendant Powell

20.     Defendant Ty H. Powell, ("Powell"), is an individual residing in Johnson County, Georgia, and can be served at 93 Aspen Lane, Kite, GA 31049.

21.     At all times relevant to this action, Defendant Powell was a fixed-site employer because it owned or operated a farm, or other similar fixed-site location where agricultural activities were performed, and because it recruited, solicited, hired, employed, housed, or transported H-2A workers as incident to or in conjunction with its own agricultural operation.[6]

22.     At all times relevant to this action, Defendant Powell was an employer of Plaintiff under the FLSA, in that it suffered or permitted Plaintiff to work.

23.     At all times relevant to this action, Defendant Powell operated an enterprise engaged in commerce or in the production of goods for commerce because he had employees

---

[5] *See* definition of "fixed-site employer" at 20 C.F.R. § 655.103.
[6] *See* definition of "fixed-site employer" at 20 C.F.R. § 655.103.

handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce, and had annual gross volume of sales made or business done that was not less than $500,000.

### Defendant Family Farms

24.     Defendant Smith Family Farms of Georgia, LLC ("Family Farms") is a Georgia corporation, with principal address at 1455 E.L. Vaughn Rd., Cobbtown, GA 30420.

25.     Defendant Family Farms can be served through its registered agent, Mack Waller, at 3168 Meeks Road, Kite, GA 31049.

26.     At all times relevant to this action, Defendant Family Farms was a fixed-site employer because it owned or operated a farm, or other similar fixed-site location where agricultural activities were performed, and because it recruited, solicited, hired, employed, housed, or transported H-2A workers as incident to or in conjunction with its own agricultural operation.[7]

27.     At all times relevant to this action, Defendant Family Farms was an employer of Plaintiff under the FLSA, in that it suffered or permitted Plaintiff to work.

28.     At all times relevant to this action, Defendant Family Farms was an enterprise engaged in commerce or in the production of goods for commerce because it had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce, and had annual gross volume of sales made or business done that was not less than $500,000.

---

[7] *See* definition of "fixed-site employer" at 20 C.F.R. § 655.103.

**Defendant Waller**

29.     Defendant Mack C. Waller,("Waller") is an individual residing in Johnson County, Georgia, and can be served at 3168 Meeks Road, Kite, GA 31049.

30.     At all times relevant to this action, Defendant Waller was a fixed-site employer because he owned or operated a farm, or other similar fixed-site location where agricultural activities were performed, and because it recruited, solicited, hired, employed, housed, or transported H-2A workers as incident to or in conjunction with its own agricultural operation.[8]

31.     At all times relevant to this action, Defendant Waller was an employer of Plaintiff under the FLSA, in that it suffered or permitted Plaintiff to work.

32.     At all times relevant to this action, Defendant Waller operated an enterprise engaged in commerce or in the production of goods for commerce because he had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce, and had annual gross volume of sales made or business done that was not less than $500,000.

## IV. STATUTORY AND REGULATORY STRUCTURE OF THE H-2A PROGRAM

33.     An agricultural employer in the United States may bring temporary foreign workers ("H-2A workers") to the United States if the United States Department of Labor ("USDOL") certifies that (1) there are not enough U.S. workers to perform the job, and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed.[9] These provisions, along with the implementing federal regulations, are commonly referred to as the "H-2A program."

---

[8] *See* definition of "fixed-*site* employer" at 20 C.F.R. § 655.103.
[9] 20 C.F.R. § 655.100

34.     Under the H-2A program, employers must file a temporary labor certification application with the USDOL's Employment and Training Administration.[10] The application must include a job offer, known as a "job order," which is used to recruit both U.S. and H-2A workers and becomes the work contract of the employed workers.[11]

35.     The job order must comply with the applicable H-2A regulations that establish the minimum benefits, wages, and working conditions that must be offered to avoid adversely affecting similarly employed U.S. workers.[12]

36.     The H-2A program imposes many obligations on the employers, including:

a)  Provide the workers free housing that meets minimum standards.[13]

b)  Provide or reimburse the workers' transportation and subsistence costs from the place from which the workers have come to the place of employment.[14]

c)  Guarantee a total number of work hours equal to at least three-fourths of the total hours offered to the worker pursuant to the work contract.[15]

d)  If the worker is paid by the hour, the employer must pay the higher rate between the Adverse Effect Wage Rate ("AEWR"), the prevailing hourly wage rate, the prevailing piece rate, the agreed-upon collective bargaining rate, or the Federal or State minimum wage rate in effect at the time work is performed.[16]

e)  If the worker is paid on a piece-rate basis, and the worker's earnings do not result in average earnings of, at least, the minimum hourly rate required by

---

[10] 20 C.F.R. § 655.130.
[11] *See* 20 C.F.R. § 655.103(b) (definition of "work contract").
[12] 20 C.F.R. § 655.121(a)(3).
[13] 20 C.F.R. § 655.122(d).
[14] 20 C.F.R. § 655.122(h)(1).
[15] 20 C.F.R. § 655.122(i).
[16] 20 C.F.R. § 655.122(l).

law then the worker's pay must be supplemented so that the worker's earnings are, at least, as much as the worker would have earned had he been paid per hour.[17]

 f) Provide to each worker, on or before each payday, a written statement that includes, among other items: the worker's total earnings for the pay period; the worker's hourly rate and/or piece rate of pay; the hours of employment offered to the worker; the hours actually worked by the worker; an itemization of all deductions made from the worker's wages; and, if piece rates are used, the units produced daily.[18] This document is commonly referred to as a "pay stub."

37. The H-2A regulations prohibit employers and their agents from charging or receiving payment of any kind from any prospective H-2A employee, in relation to their recruitment and/or employment.[19]

**V. STATEMENT OF FACTS**

**<u>Work Contract and Recruitment</u>**

38. On or around January 2021, Defendant Hernandez submitted job order number H-300-21035-054755 (the "Job Order"), to the Georgia Department of Labor ("GADOL"), and an Application for Temporary Employment Certification to the USDOL.

39. The approved Job Order (Attached as Exhibit B), included all the terms and conditions required under the H-2A regulations.

40. The approved Job Order also included the following terms:

---

[17] 20 C.F.R. § 655.122(l)(2).
[18] 20 C.F.R. § 655.122(k).
[19] 20 C.F.R. § 655.135(j).

   a)  A period of employment from 03/01/2021 through 06/15/2021.

   b)  Anticipated hours of work of 35 hours per week.

   c)  Job duties described as "harvesting, count, prune, clipping, l and unload onions. All jobs will be done under extreme weather conditions, repetitive movements like bending, stooping and heavy lifting will be involved on a daily basis. Workers will also be pulling weeds, raking, cleaning around shed areas, laying irrigation pipes, and digging ditches."

   d)  Employment at Smith Farms, Inc.,1455 E. L. Vaughan Rd, Cobbtown, Georgia.

   e)  Housing at various locations across Tattnall County and Toombs County, Georgia.

   f)  An hourly wage of $11.71 and a piece rate of $14.00 per box of onions.

   g)  A weekly pay period.

41.    In the Job Order, Defendant Hernandez agreed that it would offer and pay at least the Adverse Effect Wage Rate (AEWR), the prevailing hourly wage rate, the prevailing piece rate, the agreed-upon collective bargaining rate, or the Federal or State minimum wage rate, in effect at the time work is performed, whichever is highest.[20]

42.    At the time Plaintiff performed work for Defendants, the AEWR in effect was $11.81 and not $11.71.[21]

43.    The Job Order incorporated a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws."[22]

---

[20] *See* Exhibit B, Page 7.
[21] 86 Fed. Reg. 10996 (Feb. 23, 2021) (setting the applicable AEWR for Georgia at $11.81).
[22] *See* Exhibit B, Page 8.

44. By promising to pay the federally mandated wage rate, Defendant Hernandez also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing the workers' wages by shifting costs to the workers.

45. The Job Order contained the following Employer Certification signed by Defendant Hernandez:

> "I declare under penalty of perjury that I have read and reviewed this clearance order, including every page of this Form ETA-790A and all supporting addendums, and that to the best of my knowledge, the information contained therein is true and accurate. This clearance order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. 20 CFR 653.501(c)(3)(viii). I understand that to knowingly furnish materially false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a federal offense punishable by fines, imprisonment, or both."[23]

46. When Defendant Hernandez signed the Employer's Certification in the Job Order, he knew some of the representations were false.

47. When Defendant Hernandez signed the Employer Certification in the Job Order, he knew that he would charge prospective employees, including Plaintiff, various fees associated with H-2A recruitment and employment.

48. When Defendant Hernandez signed the Employer Certification in the Job Order, he knew that he would not provide to the H-2A workers, including Plaintiff, housing that met minimum standards required by law.

---

[23] *See* Exhibit B, Page 8.

49.     When Defendant Hernandez signed the Employer Certification in the Job Order, he knew that Defendants would not pay their H-2A workers, including Plaintiff, the hourly wage mandated by the Job Order and the H-2A regulations.

50.     Defendant Hernandez and/or his agents recruited Plaintiff and offered him a job under the terms and conditions of the Job Order.

51.     The job offer, when accepted, created a work contract between Defendant Hernandez and Plaintiff.

52.     Defendant Hernandez required, as a condition of hire, that Plaintiff pay a sum of money for travel to Georgia, visa expenses, and recruitment fees.

53.     Plaintiff incurred various immigration, processing, and travel expenses to come to work for Defendants.

54.     Plaintiff took out loans to pay the fees required by Defendant Hernandez and to pay additional necessary travel and subsistence expenses.

55.     To comply with Defendant Hernandez's hiring process, Plaintiff traveled, at his own expense, from his home in Hidalgo, Mexico, to the U.S. Consulate in Mexico for the processing of his H-2A Visa.

56.     Plaintiff incurred expenses for lodging and subsistence while he completed visa application forms, attended a consular interview, and waited for his visa application to be processed and issued.

57.     At the U.S. border in Texas, Plaintiff paid a fee to the U.S. Customs and Border Protection ("CBP") for the issuance of an Arrival/Departure Record (I-94), which is required to enter the United States.

58.     Plaintiff entered the United States on or around April 1, 2021.

59.     When Plaintiff crossed the border into the United States, Defendant Hernandez confiscated Plaintiff's passport and visa, and told Plaintiff that he would have to pay Hernandez $9,000 to get them back.

60.     Plaintiff incurred travel-related expenses on his journey to the housing location in Georgia from the U.S. Consulate in Mexico.

61.     Plaintiff arrived in Georgia on or around April 2, 2021.

62.     The expenses described in Paragraphs 52-57, and 60 were costs necessary to enter the United States as an H-2A worker and were incurred for the benefit of the Defendants.

63.     Plaintiff incurred the expenses described in Paragraphs 52-57, and 60 before receipt of his first paycheck.

64.     Defendants did not reimburse Plaintiff for any of the expenses described in Paragraphs 52-57, and 60.

65.     Defendants' failure to reimburse Plaintiff for these expenses in the first workweek brought Plaintiff's wages below the federal minimum wage and the AEWR.

66.     When Plaintiff arrived in Georgia, he was taken to Defendant Hernandez's house to complete paperwork and was then ordered to pay $3,000 to be allowed to work under the contract.

67.     Plaintiff felt compelled to pay, and did pay, the money demanded by Defendant Hernandez for fear of losing his job and having to return to Mexico without any means to pay back his recruitment loans.

**Joint Employment**

68.     Upon information and belief, all Defendants had control over the manner in which the work was performed by Plaintiff.

69.     Upon information and belief, Plaintiff was economically dependent on all Defendants.

70.     Upon information and belief, all Defendants had the power, either directly or indirectly, to hire or fire, modify the employment conditions, and/or determine the pay rates or the methods of wage payment for Plaintiff.

71.     Upon information and belief, the activities performed by Plaintiff were an integral part of the overall business operations of all Defendants.

72.     Upon information and belief, Plaintiff performed the work on Defendants' premises.

## Wages and Working Conditions

73.     Defendant Hernandez housed Plaintiff in a dilapidated mobile home with nine other men. The mobile home had no window screens, had exposed wiring, and did not have enough beds for all the workers staying there.

74.     Plaintiff worked in Defendants' farming operations from April 5, 2021until May 1, 2021.

75.     During his employment with Defendants, Plaintiff worked an average of 12 hours per day, Monday through Sunday.

76.     Instead of paying the higher wage between the AEWR and the piece rate, Defendants used a wage system whereby they pooled all the boxes picked by a group of workers, divided the number of boxes equally among the group, and paid the workers a piece rate for their share of the boxes. This resulted in wages for Plaintiff that were substantially lower than what was promised in the Job Order and what was required by law.

77.     During his employment with Defendants, Defendants paid Plaintiff in cash and did not provide paystubs.

78.     Defendants subjected Plaintiff to unsafe and inhumane working conditions, including failing to provide accessible restrooms and handwashing facilities, or access to fresh drinking water.

79.     As a result of the unsafe and inhumane working conditions provided by Defendants, Plaintiff suffered thirst, hunger, exhaustion, stress, anxiety, and emotional distress.

80.     Plaintiff's weekly earnings fell below the applicable federal minimum wage and the contract's AEWR.

81.     Defendants did not supplement Plaintiff's wages to bring his wages up to the wage rate mandated by the Job Order and federal regulation.

82.     Defendants constructively discharged Plaintiff from employment by subjecting him to exploitative and intolerable working and living conditions.

83.     As a result of the constructive discharge, Defendant Hernandez offered Plaintiff less than three-fourths of the work promised in the contract.

84.     Defendant Hernandez did not supplement Plaintiff's wages to meet the three-quarter guarantee mandated by the Job Order and federal regulation.

### Threats and Labor Trafficking

85.     Plaintiff is from an impoverished area of Mexico where there are few opportunities for gainful employment and no opportunities for earning wages comparable to those promised under the Job Order.

86.     Defendant Hernandez sought out workers from impoverished backgrounds and limited understanding of the U.S. legal system.

87.     During recruitment, Defendant Hernandez knowingly made false promises to Plaintiff about the wages and conditions of the offered employment.

88.     Defendant Hernandez induced Plaintiff to take on debt and pay recruitment fees to be hired for the offered employment.

89.     When Plaintiff crossed the border into the United States, Defendant Hernandez took Plaintiff's passport and visa to prevent Plaintiff from leaving the job. Defendant Hernandez told Plaintiff that Plaintiff would have to pay Hernandez $9,000 to get these documents back.

90.     During Plaintiff's employment, Defendants did not pay Plaintiff's earned wages in accordance with the Job Order or federal regulation.

91.     Plaintiff heard Defendant Hernandez threaten that he would report any worker who left the employment before the contract was completed and that those workers would not be able to return to the United States on another H-2A visa in the future.

92.     Plaintiff observed Defendant Hernandez and his associates circling around another worker and berating him in a threatening way. This caused Plaintiff to fear Defendant Hernandez and prevented him from asking Defendant Hernandez to return his passport and visa.

93.     Plaintiff reasonably believed Defendant Hernandez's threats and was afraid to ask for his passport and visa, or to leave the employment.

94.     Despite wanting to leave, Plaintiff continued to work for Defendants for over four weeks because he feared legal or violent retaliation from Defendants, and/or being unable to repay his recruitment loans, and/or he feared being deported, and/or he feared being unable to return to the United States with an H-2A Visa.

95.     Upon information and belief, Defendants Farms, Powell, Family Farms, and Waller knew that Defendant Hernandez was coercing workers, including Plaintiff, to work in

Defendants' operations under deplorable living and working conditions and without adequate pay.

96.     At all times relevant to his action, Defendants Farms, Powell, Family Farms, and Waller, profited from Plaintiff's labor.

97.     As a result of Defendants' labor trafficking scheme, Plaintiff experienced emotional distress, including stress, anxiety, humiliation, and fear.

98.     When Plaintiff left Defendants' employment, he still owed money on his recruitment loans.

99.     After escaping from Defendants' employment, Plaintiff continued to suffer emotional distress caused by the traumatic experience of working for Defendants and the debt burden that he was induced to incur.

## VI. CLAIMS

### COUNT I: FAIR LABOR STANDARDS ACT – MINIMUM WAGE
(Against all Defendants)

100.     Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

101.     Plaintiff brings FLSA minimum wage claims against all Defendants.

102.     Defendants failed to pay Plaintiff the required federal minimum wage rate of $7.25 for every compensable hour of labor performed in a workweek, in violation of 29 U.S.C. § 206(a).

103.     The violations alleged in this Count resulted, in part, from Defendants' willful failure to reimburse expenses, including those described in Paragraphs 52-57, and 60, which Plaintiff incurred primarily for the benefit of Defendants.

104.    Defendants' violations of the FLSA entitle Plaintiff to recover the amount of his

unpaid wages, an equal amount as liquidated damages, attorney's fees, and costs of this action.

### COUNT II: BREACH OF CONTRACT – WAGE PROVISIONS
(Against Defendant Hernandez)

105.    Plaintiff incorporates each of the allegations contained in the preceding

paragraphs by reference.

106.    Plaintiff brings breach of contract claims against Defendant Hernandez for

violations of the wage provisions of the employment contract that Defendant had with Plaintiff.

107.    Defendant Hernandez offered Plaintiff employment on the terms and conditions

set out in the Job Order and as described in Paragraphs 39-41.

108.    Among the terms Defendant Hernandez offered, and Plaintiff accepted, was a

promise to pay the higher rate between the AEWR, the prevailing hourly wage rate, the

prevailing piece rate, the agreed-upon collective bargaining rate, or the Federal or State

minimum wage rate in effect at the time work was performed.

109.    Plaintiff performed labor for Defendant Hernandez from April 5, 2021, until

May 1, 2021.

110.    Defendant Hernandez failed to pay Plaintiff the wages offered to Plaintiff under

the work contract.

111.    Defendant Hernandez, therefore, breached his employment contract with Plaintiff.

112.    As a direct consequence of Defendant Hernandez's breach, Plaintiff suffered

economic injury.

113.    Defendant Hernandez is liable to Plaintiff for the damages that arose naturally and

according to the usual course of things from Defendants' breaches, as provided by federal

common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

17

**COUNT III: BREACH OF CONTRACT - THREE-QUARTERS GUARANTEE**
(Against Defendant Hernandez)

114.    Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

115.    Plaintiff brings breach of contract claims against Defendants Hernandez for violations of the three-quarters guarantee provisions of his employment contract with Plaintiff.

116.    Defendant Hernandez offered Plaintiff employment on the terms and conditions set out in the Job Order and as described in Paragraphs 39-41.

117.    Plaintiff accepted Defendant Hernandez's offer.

118.    Among the terms that Defendant Hernandez offered, and Plaintiff accepted, was a promise to guarantee employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours were not offered.

119.    The violations alleged in this Count resulted from Defendant Hernandez's imposition of working and living conditions so intolerable that a reasonable person in Plaintiff's position would have been compelled to resign.

120.    By compelling Plaintiff's resignation, Defendant Hernandez failed to offer at least three--fourths of the workdays of the total work period advertised in the Job Order.

121.    Defendant Hernandez did not supplement Plaintiff's wages to ensure that Plaintiff was compensated for at least three-fourths of the workdays of the total work period advertised in the Job Order.

122.    Defendant Hernandez, therefore, breached his employment contract with Plaintiff.

123.    As a direct consequence of Defendant Hernandez's breach of Plaintiff's employment contract, Plaintiff suffered economic injury.

124.     Defendant Hernandez is liable to Plaintiff for the damages that arose naturally and according to the usual course of things from the Defendant's breaches, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

## COUNT IV: FORCED LABOR - TVPRA
(Against Defendant Hernandez)

125.     Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

126.     This Count sets forth a claim by Plaintiff against Defendant Hernandez under the civil remedies provision of the TVPRA (18 U.S.C. § 1595).

127.     Defendant Hernandez knowingly recruited and obtained Plaintiff's labor or services.

128.     Defendant Hernandez knowingly attempted to and did threaten Plaintiff with serious harm to obtain the labor and services of Plaintiff, in violation of 18 U.S.C. § 1589(a)(1).

129.     Defendant Hernandez knowingly attempted to and did obtain the labor and services of Plaintiff using a scheme, plan, or pattern which, in the totality of the circumstances, was intended to coerce and did coerce Plaintiff to believe that he would suffer serious harm if he were to leave the employment of Defendants, in violation of 18 U.S.C. § 1589(a)(2).

130.     Defendant Hernandez's scheme to subject Plaintiff to debt, inhumane living and working conditions, wage theft, and threats of legal repercussions if he left the job was designed to convince Plaintiff that he would suffer serious harm if he were to leave Defendants' employment.

131.     As a result of Defendant Hernandez's violations as set forth in this Count, Plaintiff seeks economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorney's fees.

## COUNT V: BENEFITTING FROM TRAFFICKING IN PERSONS - TVPRA
### (Against all Defendants)

132.    Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

133.    This Count sets forth a claim by Plaintiff against all Defendants under the civil remedies provision of the TVPRA (18 U.S.C. § 1595).

134.    Defendants knowingly benefitted financially, or by receiving anything of value, from participating in a venture which engaged in violations of 18 U.S.C. § 1589 (forced labor), and 18 U.S.C.§1592 (unlawful conduct with respect to documents), knowing or in reckless disregard of the fact that the venture engaged in such violations, in violation of 18 U.S.C. § 1593A.

135.    As a result of Defendants' violations as set forth in this Count, Plaintiff seeks economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorney's fees.

## COUNT VI: UNLAWFUL CONDUCT WITH RESPECT TO DOCUMENTS - TVPRA
### (Against Defendant Hernandez)

136.    Plaintiff incorporates each of the allegations contained in the preceding paragraphs by reference.

137.    This Count sets forth a claim by Plaintiff against Defendant Hernandez under the civil remedies provision of the TVPRA (18 U.S.C. § 1595).

138.    Defendant Hernandez confiscated Plaintiff's passport and visa while violating 18 U.S.C. § 1589.

139.    Defendant Hernandez confiscated Plaintiff's passport and visa with the intent of violating 18 U.S.C. § 1589.

140.    Defendant Hernandez knowingly confiscated Plaintiff's documents to prevent or restrict, or to attempt to prevent or restrict, Plaintiff's liberty to move or travel,  to maintain Plaintiff's labor and services, in violation of 18 U.S.C.§1592.

141.    As a result of Defendant Hernandez's violations as set forth in this Count, Plaintiff seeks economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorney's fees.


### VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1.    Grant judgment against all Defendants, jointly and severally, in favor of Plaintiff on Count I, under the FLSA, and award Plaintiff the amount of his unpaid minimum wages and an equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

2.    Grant judgment against Defendant Hernandez, in favor of Plaintiff, on Counts II and III, for breaches of contract, and award Plaintiff his actual damages arising from Defendant's contractual breaches;

3.    Grant judgment against Defendant Hernandez, in favor of Plaintiff, on Count IV, in favor of Plaintiff, under the TVPRA, in the amount of Plaintiff's compensatory damages, including actual damages, punitive damages, and damages for the emotional harm that Defendant's TVPRA violations caused;

4.    Grant judgment against all Defendants, jointly and severally, in favor of Plaintiff, on Count V, under the TVPRA, in the amount of Plaintiff's compensatory

damages, including actual damages, punitive damages, and damages for the

emotional harm that Defendants' TVPRA violations caused;

5.  Grant judgment against Defendant Hernandez, in favor of Plaintiff, on Count VI,

under the TVPRA, in the amount of his compensatory damages, including actual

damages, punitive damages, and damages for the emotional harm that

Defendant's TVPRA violation caused;

6.  Award Plaintiff pre- and post-judgment interest as allowed by law;

7.  Award Plaintiff attorney's fees and the costs of this action; and

8.  Award Plaintiff such further relief, at law or in equity, as this Court deems just

and proper.

This 4th day of April, 2023.                             Respectfully submitted,

*/s/ Solimar Mercado-Spencer*
Solimar Mercado-Spencer
Georgia Bar No.: 686614
E-mail: smercado-spencer@glsp.org

*/s/ Juan Alberto Barragan-Rangel*
Juan Alberto Barragan-Rangel
Lead Counsel
Georgia Bar No.: 421897
E-mail: jbarragan@glsp.org

*/s/ Lisa J. Krisher*
Lisa J. Krisher
Georgia Bar No.: 429762
E-mail: lkrisher@glsp.org

Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA 30303
Phone: (404) 463-1633
Fax:___(404) 529-4110

*Attorneys for Plaintiff*